*Ernest Dart,* for plaintiff in error. *Crovatt & Whitfield,* contra.

---

## KING & CLARK v. MONIAC TURPENTINE COMPANY.

The grant conveyed, for a term of ten years from January 9, 1907, "all the pine, cypress, oak, and other timber and trees, living or dead, standing or lying, of all sizes and dimensions, including stumps, roots, stock, and branches, whatsoever thereon and thereof, for all uses and purposes, of any character and description, and to be removed and taken off within the time hereinafter stated, excepting therefrom the right and privilege of second party [King & Clark], or his assigns, to cut, box, or hack any living pine trees thereon for turpentine purposes in and upon that tract or body of land located," etc. *Held:* The exception did not exclude any of the trees from the operation of the grant, but restricted the grantees from cutting and boxing the pine trees for turpentine purposes. The grantees have such an interest in the pine trees during the stipu-

lated period as will support an action to enjoin an insolvent trespasser from cutting and boxing the trees for turpentine use, and to recover such damages as the grantees may sustain from the trespass.

MAY 11, 1910.

Trespass. Before Judge Parker. Charlton superior court. April 7, 1909.

King & Clark, copartners, brought suit against the Moniac Turpentine Company and Henry Williams, to enjoin them from trespassing upon a certain tract of land, and to recover damages for the trespass already committed. The plaintiffs alleged, that they were the owners of all the timber upon the described lots of land, which they had purchased for their own use and profit; that the same was necessary for the successful conduct of the sawmill, crosstie, wood, timber, and lumber business in which they were engaged; that the acts of the defendants in turpentining the trees were a continuing trespass, requiring of the plaintiffs a multiplicity of suits; but that the damages therefrom were incapable of being estimated with any degree of certainty, and that the defendants were insolvent and unable to respond in damages. The case came on for trial, and the plaintiffs proved title to the timber, the last muniment of which was a deed from the Charlton Land & Timber Company to the plaintiffs, conveying, "for a term of ten (10) years from January 9th, 1907, all the pine, cypress, oak and other timber and trees, living or dead, standing or lying, of all sizes and dimensions, including stumps, roots, stock, and branches, whatsoever thereon and thereof, for all uses and purposes, of any character and description, and to be removed and taken off within the time hereinafter stated, excepting therefrom the right and privilege of second party, or his assigns, to cut, box, or hack any living pine trees thereon for turpentine purposes in and upon that tract or body of land located in the first land district of Charlton county, Georgia, and containing four thousand six hundred and thirty-nine (4,639) acres, more or less, and described as follows," etc. The plaintiffs submitted evidence that the defendants, without the consent and over the protest of plaintiffs, entered upon the land described in the petition, and cut, hacked, boxed, and worked the pine trees thereon suitable for turpentine purposes, and still over the objections of the plaintiffs continued to do so until the present time; and that the working of the trees, outside of the turpentine taken therefrom, has injured and damaged plaintiffs because of the

32

trees being blown down and destroyed by such work, to the extent of at least $500. At this juncture the plaintiffs offered an amendment alleging, that "while they leased the timber in controversy from the Charlton Land & Timber Company, for all purposes for the term specified of ten years from Jan. 9, 1907, except the turpentine privilege, and held possession of same for said purposes, that such turpentine privilege is inconsistent with the enjoyment of said timber during term for said other purposes; that the boxing and working of said timber for turpentine purposes also tends to injure and damage said timber for such other purposes, by subjecting it to destruction by fire and storms, and renders the timber less valuable for such other purposes, including the manufacture of same into lumber and cross-ties; and that plaintiffs, holding said timber under said Charlton Land and Timber Company for such other purposes, are in duty bound to protect same against the boxing and working same for turpentine purposes by defendants as trespassers, not only because of the injury and damage caused thereby to said timber for the purposes for which it was conveyed to them, but in protection of the freehold of their lessors, the said Charlton Land & Timber Company. . . That while they may not recover of and from defendants damages for the turpentine privileges in and to said timber, they are entitled to recover the amount of the damages claimed as injury to said timber for the purposes for which the same was leased and conveyed to them; and as such injury and damage is irreparable, they are entitled to enjoin the same, which they pray may be done." They offered to support this amendment by proof. The court disallowed the amendment and granted a nonsuit on motion of the defendants, predicated upon the ground that inasmuch as plaintiffs, under the deed from the Charlton Land & Timber Company to them, had no right or title to cut, box, or hack the trees for turpentine purposes, they were not injured thereby, and could not recover under the pleadings and evidence, and were not entitled to a permanent injunction as prayed. Exception is taken to the disallowance of the amendment and the grant of a nonsuit.

*J. L. Sweat* and *H. F. Dunwody,* for plaintiffs.

*Wilson, Bennett & Lambdin,* for defendant.

EVANS, P. J. (After stating the facts.) The plaintiffs showed that their immediate grantor, the Charlton Land & Timber Com-

pany, was the owner of the freehold; and their contention is that they are the owners of all the timber granted in their lease by the Charlton Land & Timber Company, during the period of their lease, with the restriction that they should not use the same for turpentine purposes. The defendants, on the other hand, contend that, the turpentine privilege being expressly excepted from the grant, the plaintiffs had no such right or title as would enable them to maintain a suit to enjoin the defendants from working the timber for turpentine purposes. The correctness of the respective contentions of the parties depends upon a construction of the timber deed from the Charlton Land & Timber Company to King & Clark, an abstract of which appears in the statement of facts. A grant of timber to be cut and removed within a specified time passes title to the timber, subject to be defeated upon a failure to cut and remove it within the time stipulated in the grant. *Morgan* v. *Perkins,* 94 *Ga.* 353 (21 S. E. 574). The grant of the timber by the Charlton Land & Timber Company to the plaintiffs was as broad as is possible for words to make it. The grantors in that deed conveyed all the timber for all uses and purposes, "excepting therefrom the right and privilege of second party or his assigns to cut, box, or hack any living pine trees thereon for turpentine purposes." The exception does not operate upon the grant of the trees, but upon the use to which they may be put by the grantees or their assigns. The grant operates upon all the trees conveyed, and the exception does not undertake to except any tree upon the land. The grantees are given the right during the period of the lease to use the timber for any purpose, except that they may not turpentine it. They may cut the trees and manufacture them into cross-ties or lumber, but they are prohibited by their deed from turpentining the timber. The exception in the lease is more in the nature of a covenant not to put the timber to turpentine use than it is an exception of anything which was granted. A covenant by a lessee to plough the demised premises, except the warren, in due course of husbandry, was held to imply a covenant not to plough the warren. St. Albans *v.* Ellis, 16 East, 352. The grantees, therefore, had the right to use the timber as restricted by the deed. It was their timber, and the restriction that they were not to use it in a particular way gives no right to an insolvent trespasser to damage or destroy

the timber by making use of it in a manner denied the plaintiffs by their grant.

It would make no difference to the defendants if the deed should be construed as reserving to the grantor the turpentine privileges in the timber, because it does not appear from the record that they are assignees, or privies in estate with such grantor. So far as disclosed by the record they are insolvent trespassers, without any claim of title to the land or the timber; and the existence of a right in some one else to do an act would be no justification to themselves to do the same act, which would have the effect to injure the timber of the plaintiffs by making it liable to be blown down and destroyed by fire. The court erred in rejecting the proffered amendment and also in granting a nonsuit.

*Judgment reversed. All the Justices concur., except Atkinson, J., disqualified.*